## JOHN W. COONEY COMPANY,

*vs.*

## ARLINGTON HOTEL COMPANY.

In the Matter of the Petition of James Frank Ball, Aulick Palmer and Peyton Gordon, Receivers of Arlington Hotel Company, to assess stockholders of said Arlington Hotel Company on unpaid stock subscriptions.

## T. COLEMAN duPONT, Z. D. BLACKISTONE, WILLIAM H. FENN, LEWIS L. DUNHAM and WALBRIDGE S. TAFT,

*Appellants,*

*vs.*

## JAMES FRANK BALL, AULICK PALMER and PEYTON GORDON, Receivers of Arlington Hotel Company,

*Appellees.*

*Supreme Court, on appeal, Nov. 21, 1918.*

General Corporation Law (22 *Del. Laws, c.* 394) § 20, providing that stockholders' liability for unpaid subscriptions may be enforced as provided for in *section* 49, which section provides for creditor's action at law or bill in Chancery, does not make such remedies exclusive, and such liability may be enforced by receivers on insolvency.

Where a creditor proceeds in equity to secure the appointment of receivers on ground of insolvency of the corporation, obtaining a judgment and unsatisfied execution is not a condition precedent to enforcement by the receivers of stockholders' liability for unpaid subscriptions.

Creditor's remedy by "bill in Chancery" against a stockholder of a corporate debtor, given by General Corporation Law (22 *Del. Laws, c.* 394) § 49, must be initiated by a creditor's bill.

The ordinary liability of a stockholder for unpaid subscription is an asset of the corporation, enforceable by its receivers upon insolvency; while a statutory liability for a sum in addition to unpaid subscriptions,

as under a "double liability" statute, is not such an asset, but a liability directly to the creditors, which a receiver, in the absence of statutory authority, has no power to enforce.

Stockholder's liability in addition to unpaid subscriptions, as under a "double liability" statute, is not resorted to if the assets of the corporation, including unpaid subscriptions, are sufficient to pay creditors.

Stockholder's liability for unpaid stock is unaffected by fact that corporation issued stock as full-paid and agreed that it should be non-assessable; such agreement being *ultra vires* and void, and the acceptance of stock raising an implied promise to pay therefor.

It is no defense to liability for unpaid stock that, the stock having been issued without consideration, contrary to the constitutional provision, the issue was *ultra vires* and void; the *ultra vires* feature of the transaction being, not the issuance, but the failure to exact payment for the stock, and the agreement that it need not be paid for.

As to stockholders' liability for unpaid stock, there is no distinction or priority of liability between stock subscribed for and that which is issued and accepted without being paid for, or between preferred and common stock; the test, under the statute, being not the class or character of the stock, but whether it has been paid for.

Although the General Corporation Law (22 *Del. Laws, c.* 394) provides that at no time shall the total amount of the preferred stock exceed two-thirds of the actual capital paid in cash or property, it is no defense to liability for unpaid preferred stock that the issue of preferred stock was void and not assessable for the debts of the company because the common stock was not paid for in cash, since creditors may assume that the par value of common stock has been paid, so that the words of the statute, "actual capital paid in cash or property," mean, as to creditors, the par value of the common stock issued.

One subscribing for and accepting preferred stock for his own benefit and holding himself as the legal owner thereof, is estopped to deny liability as stockholder to bona fide creditors on the ground that his stock was illegally issued and void.

The liability of stockholders for unpaid subscriptions is unaffected by creditors' knowledge or lack of knowledge of the facts and circumstances under which the stock was issued.

That a creditor actually participated in the issuance of unpaid stock as full-paid and non-assessable, or consented thereto, does not estop him from enforcing, as a statutory liability on unpaid stock, his claim against other stockholders, to whom such stock was issued with his assistance or acquiescence, where there was no intention on his part to perpe-

trate a fraud upon the others, or gain an unfair advantage by the transaction.

Stockholders should not be assessed and required to pay their assessments before their legal liability is definitely determined, because the amounts assessed may be much in excess of what they are legally liable to pay.

In proceedings by receivers of insolvent corporation to assess stockholders on their liability for unpaid stock, interest on creditors' claims should commence at the time the receivers asked the court to make an assessment for the payment of such claims; there being nothing before which indicated that they would be expected to pay such claims.

In proceeding by receivers of an insolvent corporation to enforce stockholders' liability for unpaid stock, the receivers are entitled to proper expenses and a reasonable compensation, to be paid by the stockholders.

In proceeding by receivers of an insolvent corporation to enforce stockholders' liability, it was inequitable to require the single stockholder found in the jurisdiction to pay the entire assessment, although such course was the most convenient for the receivers and expeditious for the creditors; but the receivers should have been ordered to collect every assessment they should find to be collectible, and that would justify the expense of collection, in order that the burden might be fairly distributed.

Appeal from the Court of Chancery. Upon a bill filed in the court below by John W. Cooney Company, a judgment creditor, on behalf of itself and all other creditors, against Arlington Hotel Company, receivers were appointed, who thereafter presented to the Chancellor a petition praying that an assessment be levied against subscribers to the capital stock of the Arlington Hotel Company who had failed to pay in full the amounts of their respective subscriptions. From a decree entered by the Chancellor on August 4, 1917, levying such assessment, the appellants, five of the subscribers, took separate appeals. Decree affirmed, except as modified in the opinion of the Supreme Court.

The facts in addition to those stated in the report of the case below (*ante p.* 286, 101 *Atl.* 879), are sufficiently stated in the opinion of the Supreme Court.

Argued before Pennewill, C. J., Boyce, Conrad, Rice and Heisel, J. J.

*William S. Hilles* and *Robert H. Richards*, for the appellants duPont, Fenn, Dunham and Taft.

*Saulsbury, Morris & Rodney*, for appellant Blackistone.

*John R. Nicholson*, with him *Henry H. Glassie*, of Washington, D. C., for the appellees.

PENNEWILL, C. J., delivering the opinion of the Court:

The statement of the case contained in the opinion of the Chancellor, from whose decree this appeal was taken, is so clear and comprehensive that it is deemed unnecessary to restate in this opinion the facts, the pertinent constitutional and statutory provisions, the proceeding in the lower court, and the many questions argued by counsel. We shall discuss only those questions that appear to be important and upon which the appellants seemed to mainly rely.

Upon the much debated question of jurisdiction the court have reached the opinion, after a very careful examination of the case, that the conclusion of the Chancellor is sound. But our opinion is based upon reasoning somewhat different from that of the Chancellor. The court are not much concerned about the history of the law respecting the stockholder's liability for the debts of the corporation before the enactment of our General Corporation Act (22 *Del. Laws*, *c.* 394). The learned and elaborate discussion of this subject, including the trust theory and the holding out theory, in the briefs of counsel, is interesting but not very helpful. Whatever may have been the law before, and whether the statute of this State is simply declaratory of pre-existing law or not, the important fact is that the statute clearly and expressly states the stockholder's liability to creditors to the extent of the par value of stock not paid for. The only troublesome question is: What proceeding may be employed to enforce the liability? Are the two remedies mentioned in section 49 of the Delaware act exclusive of a pre-existing remedy that would be equally, if not more, convenient and effective in carrying out its purpose; and if they are, does the statute mean that the remedy "by bill in Chancery" shall be initiated by what is known as a creditor's bill? Or does it

mean any proceeding in that court that is adapted to the ac-
complishment of the purpose sought? It so happens that New
Jersey has an incorporation law very similar to ours, and most
of the questions raised in this case have been raised there and
settled by decisions of the highest court of that State. A good
deal of ingenuity and refinement have been used by counsel for
the appellants in the effort to show that there is a very sub-
stantial difference between the statutes of the two states, but
the argument is not convincing. There is, of course, some
difference in language, but it seems to us the effort to find any
in principle is strained, and the distinction contended for ex-
ceedingly technical.

There is but one difference noted by the appellants
which need be considered by the court. The difference to which
we refer, and upon which alone it is possible to base an argu-
ment, is the concluding clause of section 20 of the Delaware
act which does not appear in the New Jersey act, viz:

"Which said sum or proportion thereof may be recovered as provided
for in section 49 of this act * * * after a writ of execution against the
corporation has been returned unsatisfied as provided for in section 51 of
this act. * * * "

The courts of New Jersey have held that the remedies pre-
scribed by section 92 of their act (2 *Comp. St.* 1910, *p.* 1655),
which corresponds with section 49 of the Delaware act, cannot
be employed to enforce the liability of stockholders under sec-
tion 21 of their act, which corresponds with section 20 of our
act without the concluding clause. And the reason for so hold-
ing appears to be that said remedies are made available in
actions against officers and directors, as well as stockholders,
and that the Legislature in enacting section 92 had in mind
liabilities other than those that might arise under their section
21. We agree with the construction placed upon section 92 of
the New Jersey act by the courts of that State, and, therefore,
hold that the remedies prescribed by section 49 of the Delaware
act could not be employed to enforce the stockholders' liability
under section 20 if that section did not contain the clause which
specifically makes such remedies available. And we are more

strongly confirmed in this opinion because upon investigation it is found that said section 49 was taken from the Incorporation Act of 1883 (17 *Del. Laws, c.* 147), which did not contain the concluding clause of section 20 of the present act. The concluding clause of section 20, unlike the New Jersey law, expressly makes said remedies applicable, so that the questions that arise, touching the matter of jurisdictions, are the two we have already mentioned.

But assuming that the procedure adopted in the court below was not authorized or contemplated by the statute, are the remedies mentioned in section 49 and made available to creditors by section 20 of our statute exclusive of the usual procedure employed in collecting the assets and paying the debts of an insolvent corporation, viz: a bill in Chancery for the appointment of receivers on the ground of insolvency? If the statute had not provided any remedy at all for enforcing the stockholder's liability under section 20, unquestionably the creditor would have a remedy in equity, and such has been the decision of the courts of New Jersey and other states in similar cases. Can it be that because the Delaware act provides that the creditor may enforce the stockholder's liability under section 20 by an action at law or by bill in Chancery he is not permitted to enforce such liability by proceeding under the insolvency act? Are the remedies prescribed exclusive of or additional to the usual remedy in Chancery? It seems to the court that it was the purpose of the Legislature, not to take away from the creditor a plain and effective remedy that already existed, but to provide other remedies that he might use if he preferred to do so, and that might be more available and effective in some cases. It is reasonable to believe that the Legislature intended by the concluding part of section 20 to make the creditor independent of receivers appointed under the Insolvency Act, by providing remedies that he might employ directly against the stockholder. And it is also reasonable to believe that the Legislature thought there might be cases where the corporation would not be in such a condition of insolvency as would justify the appointment of receivers under the statute, but nevertheless in such a condition that

the creditor could not collect his claim by judgment and execution. This view is strengthened by the fact that the statute provides· that the particular remedies prescribed may be employed only after judgment has been recovered against the corporation and execution thereon returned unsatisfied.

There can be no doubt that obtaining a judgment and unsatisfied execution against the corporation is a condition precedent to the employment of the remedies mentioned in section 49 by the creditor directly against the stockholders. And the reason is that the law does not permit a creditor to collect his claim from stockholders if he can recover it from the corporation, and the only way his inability to do this can be shown to the court is by a judgment and unsatisfied execution. But if he proceeds independently of the statute, by a bill asking for the appointment of receivers on the ground of insolvency, a judgment and execution are not required because the court is compelled to determine the very fact that the judgment and execution are designed to establish. *Firestone Tire & Rubber Co. v. Agnew, et al.,* 194 *N. Y.* 165, 86 *N. E.* 1116, 24 *L. R. A. (N. S.)* 628, 16 *Ann. Cas.* 1150.

It will be observed that section 41 of the Incorporation Act of 1883, while providing for the creditor an action at law directly against the stockholder did not give him a remedy by bill in Chancery. The natural inference from this circumstance is that the Legislature intended in the present act to provide for the creditor a direct remedy in Chancery also, and in addition to the one he already had under the Insolvency Act. The giving to the creditor a personal and direct remedy at law by the act of 1883 did not take away from receivers the power to collect the assets and pay the debts of a corporation; neither did the giving of such a remedy in Chancery by the present act take away such power.

It is the opinion of the court, therefore, that there are now two remedies in Chancery for the enforcement of the stockholder's liability under section 20, viz: (1) A proceeding under the Insolvency Act for collecting the assets and paying the debts of the corporation, which remedy existed prior to

the passage of the statute and was the one employed in this case. (2) A proceeding by bill in Chancery as prescribed by the statute; and this remedy was intended by the Legislature to be used by the creditor directly against the stockholder, and must be initiated by a creditor's bill. In the one case a bill would be filed asking for the appointment of a receiver because of insolvency, and this would probably be the procedure chosen where undoubted insolvency could be shown. In the other case the creditor would file a bill against the stockholder if he is unable to collect his claim by legal process as evidenced by a judgment and unsatisfied execution.

The appellants argued strongly and with much confidence that receivers could not, under the law, enforce a stockholder's liability created by statute, as in this case, and cited many authorities which seemed to sustain such proposition. But upon examination the cases referred to do not seem to us to be applicable to the present case. The statute of this State is unlike those that impose a liability upon the stockholder beyond the amount of his unpaid stock, such as double liability statutes. Appellants' cases, for the most part, as well as their citation from 1 *Cook on Corporations*, *(7th Ed.)* § 218, involved what may be termed double or additional liability laws. At §§ 212, 213, the beginning of the treatise on this subject, it is said:

"The state Legislatures, however, in many instances, desire to increase the liability of stockholders to corporate creditors. Accordingly statutes are passed expressly declaring that the stockholders shall be liable for a specified sum, in addition to their unpaid subscriptions."

It is this kind of liability that is meant when "statutory liability" is referred to, and Mr. Cook says:

"This is called the statutory liability of stockholders."

The failure to note the distinction between the liability of stockholders to the extent of the par value of their stock and the statutory liability in excess thereof has resulted in some confusion in the cases and text-books. The first mentioned, or ordinary liability, is an asset of the corporation, and the

second or additional liability is not, it being a liability directly to the creditors, which a receiver, in the absence of statutory authority, has no power to enforce; and it is not resorted to if the assets of the corporation, including unpaid stock, are sufficient to pay the creditors.

Are the amounts unpaid by stockholders on their shares of capital stock assets within the meaning of the law? We think that much of the confusion in the law upon this subject is removed, and the solution of some of the questions in this case simplified when we recognize, as we must, that before the enactment of our incorporation law it had become a well-settled American doctrine that unpaid stock of a corporation constitutes in equity a trust fund for the benefit of creditors of the corporation. The doctrine was first announced by Mr. Justice Story in *Wood v. Dummer*, (1824) 3 *Mason* 308, *Fed. Cas. No.* 17944. And in *Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 22*0, it was said:

"The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. * * * It is publicly pledged to those who deal with the corporation, for their security. Unpaid stock is as much a part of this pledge, and as much a part of the assets of the company, as the cash which has been paid in upon it. Creditors have the same right to look to it as to anything else, and the same right to insist upon its payment as upon the payment of any other debt due to the company. As regards creditors, there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation."

One reason urged for the contention that unpaid stock is not liable for the debts of the corporation, as we understand the arguments, is because the company issued the stock as full paid, and agreed that it should be non-assessable. There can be no question, in view of the authorities, that, in the absence of such an agreement, unpaid stock is liable for the debts of the corporation and constitutes assets for such purpose.

And clearly, according to the authorities, the agreement referred to was ultra vires and void, so that the situation is the same as though there was no such agreement. Stripped of the agreement it is a plain case of an issuance of stock by the company and acceptance by the holder without being paid for. Under such circumstances there can be no doubt that the acceptor impliedly agreed, and is equitably bound, to pay for the stock. Then it follows that even if the corporation, because of its agreement, could not enforce payment, the receiver appointed under the insolvency statute would have a right, in a court of equity and under the direction of the Chancellor, to collect it, there being no other assets out of which the debts of the corporation could be paid. Money or property paid for capital stock are assets liable for the debts of the company, and why should money due but unpaid for such stock not be equally liable? Unpaid *subscriptions* unquestionably are liable because they are legal assets, and in our opinion the acceptor of stock not paid for or subscribed for, is likewise bound to pay for it, and his liability constitutes an equitable asset which a statutory receiver can enforce. It is admitted that such a receiver has power to collect unpaid *subscriptions* to the corporation for capital stock because the relation between the stockholder and the company is contractual and the unpaid subscription an asset of the corporation. But a contract or promise to pay may be implied as well as express, and it clearly appears from the authorities that the acceptance of shares of stock under a law similar to ours, without subscription, raises an implied promise to pay for them. Some courts call such a liability an equitable asset, but whatever it may be called it is a liability that may be enforced to pay the debts of the corporation, and by no one more properly than a receiver appointed under the insolvency statute.

In *See v. Heppenheimer*, 69 *N. J. Eq.* 36, 78, 61 Atl. 843, 860, the court said:

"In equity, and as against creditors, the acceptance of stock, without paying for it, places the acceptor in the position of a subscriber."

See, also, *Odd Fellows Hall Co. v. Glazier*, 5 *Har.* 172; *Easton Nat. Bank v. Amer. Brick, etc., Co.*, 70 *N. J. Eq.* 732, 64 *Atl.* 917, 8 *L. R. A.* (N. S.) 271, 10 *Ann. Cas.* 84; *Holcombe v. Trenton White City Co.*, 80 *N. J. Eq.* 122, 82 *Atl.* 618.

The common stock having been issued without consideration, it is contended that such an issue was ultra vires and void, and being void the holders thereof cannot be held liable to the creditors of the company. This contention would be stronger if the issuance of the stock was ultra vires, and therefore void. But this is a different case from those referred to in which the stock issued was in excess of that authorized by the charter of the company. There the act was held to be ultra vires because the corporation had no power to issue the stock at all. It is not contended in this case that the corporation had no authority to issue the stock, but that it is void because it was issued without being paid for, and under an agreement that it should not be paid for. In the case of *Rosoff v. Gilbert Transp. Co.*, (D. C.) 221 *Fed.* 972, 986, the following was quoted with approval from the case of *of New Haven Trust Co., Receiver, v. Gaffney*, 73 *Conn.* 480;

"Any contract by the company to issue shares at less than par was consequently *ultra vires*. The defendant, by taking the shares in question, became, under his contract of membership, liable to pay $100 for each of them. The condition that less was to be accepted, being *ultra vires*, was void. * * * The company which the receiver represented could therefore have maintained this action, and the plaintiff has the same right."

The company in the present case having the right to issue the amount of stock that was issued, the only act that was ultra vires and void in the transaction was the issuance of the stock without its being paid for and the agreement that it was full paid and non-assessable. In legal effect, therefore, it was the same as though it had been issued without any such agreement. The law of this State contemplates that stock *may* be issued contrary to the statute, that is, without being paid for, and if it is so issued the acceptors are made liable to the creditors of

the company to the extent of its par value. If the stock issued without consideration is void and, therefore, non-assessable for the payment of creditors' claims there was no reason for the law that provides for its assessment. The law means, and practically says: Corporate stock shall not be issued without valid consideration, but if it is so issued, contrary to law, the acceptor will be bound to pay its par value if the debts of the company cannot be paid otherwise. The cases cited, that were brought to enforce the stockholder's liability for unpaid stock would not have risen if the issuance of the stock was void, because they were brought to enforce the stockholder's liability for stock that was issued contrary to law.

Although the Constitution of this State provides that "no corporation shall issue stock, except for money paid, labor done, or personal property," etc. (*Article* 9, § 3), it cannot be that directors who have issued bonus stock to themselves, or acquiesced in its issue, with full knowledge of all the circumstances, can escape the liability the law imposes by claiming that their stock was issued in violation of law. Persons who accept stock issued in violation of law, of which they had knowledge, cannot escape the liability incident to the relation of stockholders which they have with full knowledge assumed. And even though stock issued without consideration could be held to be void under our constitutional provision, and could be canceled by the corporation or upon the application of bona fide stockholders, it does not follow that the acceptor of such stock could claim immunity from assessment. Certainly a stockholder cannot escape such assessment if he has held himself out, or permitted himself to be held out, as the owner of the stock; and much less could he escape if he participated in the unlawful issue or acquiesced therein.

It is insisted that the liability of common stockholders to pay the debts of the corporation cannot be enforced, if at all, until after subscriptions to the preferred stock have been collected; and the reason assigned is that subscriptions to the preferred stock are contracts made with the company and constitute assets which the corporation might have collected,

and which, therefore, its receiver can collect. Such subscriptions being clearly property or legal assets of the company, it is argued that they must be collected and applied in payment of the debts of the corporation before the common stockholders, whose stock was not subscribed for and not paid for, can be assessed, because the liability of such stockholders is not an asset of the corporation. But the statute that imposes the liability makes no distinction, and creates no, priority, between stock subscribed for and that which is issued and accepted without being subscribed for. All stockholders to whom was issued stock not paid for are liable under the statute, and no distinction can be made between preferred and common holders without adding something to the statute. And moreover, there is, as already said, a contractual relation in both cases, the promise to pay being express where the stock is subscribed for and implied where it is not. Certainly no good reason can be given why one class of stock should be liable for the debts of the company before another, if neither has been paid for. The liability is the same, and the test, under the statute, is not the class or character of the stock but whether it has been paid for.

It is contended by one of the appellants, a holder of shares of preferred stock, that "the issue of preferred stock of the company is wholly void and not subject to any assessment for the debts of the company," because the General Corporation Law of this State provides that "at no time shall the total amount of the preferred stock exceed two-thirds of the actual capital paid in cash or property." It is not denied that the company had authority, under its certificate of incorporation, to issue all the preferred stock that was issued; so that the contention is not based on the fact that the company issued more stock than its charter or certificate of incorporation authorized. The question raised is simply this: Is the issue of preferred stock void, and non-assessable for the payment of creditors' claims, because the common stock had not been paid for in cash to the company? Creditors could know, and perhaps would be bound to know whether the company, under its certificate of incorporation, was authorized to issue as much

preferred stock as was issued, but they could not be expected to know that the common stock had not been paid for. Indeed, they had a right to assume that the par value of the common stock had been paid to the corporation as required by law. It is reasonable, therefore, to hold that the words of the statute, "actual capital paid in cash or property," mean the par value of the common stock that is issued, and liable to be assessed for the debts of the corporation. So far as creditors are concerned stock not paid for may be treated as cash or property because it is liable for the payment of their claims. The position taken by the preferred stockholder is ingenious, but in the opinion of the court unsound in view of other provisions of the general incorporation law, and its manifest intent, when considered as a whole.

To hold differently would, in many cases, not only cripple but make nugatory the purpose of the law to protect creditors' claims to the extent of the par value of all stock whether common or preferred. Moreover, the law does not contemplate that a person may subscribe for and accept preferred stock for his own benefit, hold himself out as the legal owner thereof, and escape liability to bona fide creditors on the ground that his stock was illegally issued, and void. He will be estopped from making such defense.

It is further insisted by the appellants that holders of common stock not paid for are not liable to pay the debts of those creditors who extended credit to the company with knowledge of the facts and circumstances under which the common stock was issued. It may be conceded that in the absence of a statute the decided weight of authority sustains such contention. But we think this is not the law in any jurisdiction where there is a statute making the holders of unpaid stock liable to the creditors of the company. New Jersey and Illinois have statutes very similar to ours, and in neither have the courts recognized the rule contended for by the appellants. Our statute is very general in its language, and broad enough to comprehend all claims that are legally and equitably collectible. Under it the stockholder's liability is express and unqualified; it makes no exception

and recognizes no distinction between creditors. As was said by the court in the *Easton Nat. Bank Case*, 70 N. J. Eq. 732, 739, 64 *Atl.* 917, 8 *L. R. A.* (*N. S.*) 271, 10 *Ann. Cas.* 84:

"But in this state the stockholder's liability to creditors does not depend alone or chiefly upon the theory of 'holding out'. It depends upon the stockholder's voluntary acceptance, for consideration touching his own interest, of a statutory scheme to which watered stock, under whatever device issued, is absolutely alien, and which requires stock subscriptions to be made good for the benefit of creditors of insolvent companies, without distinction between prior and subsequent creditors, or between creditors who had notice and those who had none."

But while our statute protects all creditors of the corporation, it comprehends only such claims as are just and valid under the well-settled principles of law. If the proceeding is brought in equity it must be governed by the principles of equity. And this leads us to inquire whether the claims of those creditors who gave credit to the company with full knowledge of all the facts attending the issuance of the stock, and who actively participated in the issuance of the stock, can enforce payment against the stockholders in a court of equity.

We are clearly of the opinion that mere knowledge that stock issued as full paid and non-assessable was not in fact paid for, should not preclude the creditor from enforcing the liability of the holder because the creditor may also know or have good reason to believe that the holders of such stock would be legally liable for the debts of the company to the extent of the par value of their stock. While the creditor with knowledge could not have given credit upon faith that the stock was paid for, he may very well have given credit upon the belief that the holder of the stock would be liable to the creditors under the statute whether he had paid for it or not.

It was said in the *Easton Bank Case:*

"Why, if they knew the stock issued as full paid was not full paid in fact, may they not be justified in dealing with the very stockholder's liability thus arising as a part of the assets of the company for the purpose of satisfying creditors' claims?"

It did seem to the court for a while that the rule should be different if the creditor had actually participated in the issuance of unpaid stock as full paid and non-assessable, or had consented thereto. The court were strongly inclined to believe that such a creditor should be estopped in a court of equity from enforcing his claim against other stockholders to whom stock was issued with his assistance or acquiescence. It seemed like permitting a party to take advantage of his own wrong, or to profit by an illegal transaction in which he was, in a sense, *particeps criminis.* But after a most careful consideration of the question we were forced to the conclusion that such a position could not be sustained by reason or authority. In Illinois and Connecticut the courts have held that knowledge was not a bar, and the reasoning is broad enough to cover participation as well. But the courts of New Jersey have dealt with cases in which participation was distinctly urged as a bar. The strong and leading case in which this question was involved is the *Easton Bank Case.* The court in that case carefully considered the question whether a creditor who was a stockholder with full knowledge of all the facts and circumstances connected with the issuance of the stock not paid for, and who in fact managed or directed the issuance of such stock, could enforce the statutory liability of stockholders in his own behalf. The reasoning of the court seems to us to be sound and unanswerable. Justice Pitney, in delivering the opinion, considered the status of a creditor with knowledge only and also one who had participated, saying:

"As to the status of Frederick Green in the case before us, the evidence does not satisfy us that he participated in the arrangement for the issuance of this stock for the patents. * * * There is nothing, therefore, to bar his individual claim save that he had notice of the fact that the stock was issued as full paid for property purchased. As already shown, such notice is not sufficient to debar him. As to the claim of Henry Green, he, of course, did participate actively in the transaction that resulted in the improper issuance of the stock in question, and he received a part of the stock himself. But there is nothing to show that he intended any actual fraud upon his fellow stockholders. * * * We do not believe that at that time it was at all contemplated that any creditor of the company would be permitted to remain unpaid. Judge Green was, by common

consent, permitted to assume and exercise the entire management of the concerns of the company, all parties being at the time sanguine of its ultimate success.   The moneys that he loaned to the company were advanced for the general benefit of the stockholders, including himself. They are a just and lawful claim as against the company, and not an inequitable claim as against the delinquent stockholders.  His estate cannot be debarred on the ground of estoppel, for his associates, who are now disputing their individual liability to pay, were not at all misled by the circumstance that their stock certificates were marked 'full paid' and for 'property purchased' since they knew the fact to be otherwise.   Nor is the Green estate debarred by the operation of the maxim '*in pari delicto potior est conditio defendentis.*'   If it were seeking any advantage out of the unlawful agreement, this maxim would apply.   But that agreement being absolutely void on grounds of public policy, his rights as a creditor for moneys actually advanced remain unimpaired.   *   *   * As against the delinquent stockholders, therefore,   *   *   *  both the Green claims are entitled to payment.   Payment of the Henry Green claim should, of course, be deferred until his estate contributes its proper portion of the amount necessary to satisfy the decree."

And so in the present case, Mr. Taft, one of the largest creditors, advanced a large amount of money for the general benefit of all the stockholders, and there was no thought at the time that he would be permitted to lose any part of the sum loaned to the company.   He must, of course, suffer his part of the loss, but it would not be just or equitable that he should lose the entire amount he advanced for the benefit of all, and with their knowledge and consent.   While all those who participated in the issuance of the stock were acting contrary to law, there is nothing to indicate that any one was seeking to perpetrate a fraud upon the others, or gain an unfair advantage by the transaction.   They were acting in good faith towards one another for the accomplishment of a common object, and it is just and equitable that one who gave credit to the company under such circumstances should be able to collect his claim under the statute.   If at the time the delinquent stockholders are given an opportunity to make defense, it is shown that any creditor is not equitably entitled to collect his claim, it will be the duty of the Chancellor to so decide.   All that this court determines now is that any person who advanced money, rendered services or contributed other valuable thing

to the company honestly, in good faith and for the general benefit of all is entitled to recover under the statute from the delinquent stockholders his just, reasonable and equitable claim.

It is strongly insisted by the appellants that it is inequitable that the stockholders should be assessed and required to pay their assessments before their legal liability is definitely determined, because the amounts assessed may be very much in excess of what they are legally liable to pay. We think this is the correct procedure and should have been adopted by the Chancellor, but our conclusion, that knowledge or participation on the part of the creditor whose claim is just and equitable constitutes no defense for the stockholder, covers every claim with the possible exception of that of the company's counsel, which is strongly opposed by the appellants because it was upon his advice that the bonus stock was issued as full paid and non-assessable. We do not think this court would be justified under the circumstances in ordering the assessments already made set aside on account of this one claim, which the stockholders will be permitted to contest, if they desire to do so, at the time the distribution of the fund paid in is adjusted.

With respect to the payment or allowance of interest on creditors' claims the court are of the opinion that the general rule should prevail. While it seems to be the rule in courts of equity that claims against an insolvent corporation should not bear interest after the appointment of a receiver, the reason is based largely upon the fact of insolvency, and the consequent insufficiency of the assets to pay the entire indebtedness. In the case of *Blair v. Clayton Enterprise Co.*, 9 *Del. Ch.* 95, 77 *Atl.* 740, cited by the appellants, the court, in holding that interest should be calculated on claims down to the date of the order of the appointment of a receiver, said:

"This is the settled practice in the administration of estates of insolvent corporations in Delaware."

But the reason for such rule does not exist where the assets or property legally liable for the payment of creditors' claims is sufficient, to pay all of them including interest. If the creditor had brought an action at law, as he might have done under the

statute, or had filed in Chancery what is known as a creditor's bill, it would not be contended, we think, that interest could not be collected from the time suit is brought, if there are sufficient assets to pay it. This is the law in those jurisdictions where the statute provides that stockholders shall be liable for the debts of the company to the extent of the par value of their stocks and when the proceeding is directly against the stockholders. *Burr v. Wilcox*, 22 *N. Y.* 551; *Handy v. Draper*, 89 *N. Y.* 334; *Mason v. Alexander*, 44 *Ohio St.* 318, 7 *N. E.* 435; *Corning v. McCullough*, 1 *N. Y.* 47, 58, 49 *Am. Dec.* 287; *Baker v. Bank*, 9 *Metc.* (*Mass.*) 182; *Terry v. Anderson*, 95 *U. S.* 628, 24 *L. Ed.* 365. And under the National Banking Act (*Act Cong. June* 3, 1864, *c.* 106, 13 *Stat.* 99), it has been held that interest runs from the date of the comptroller's order to collect an amount equal to the full par value of the stock, the amount due from the stockholders being then liquidated and payable. *Casey v. Galli*, 94 *U. S.* 673, 24 *L. Ed.* 168. In *Burr v. Wilcox*, *supra*, the court said:

"This liability cannot, I think, be said to attach upon any particular stockholder until a suit is commenced against him to enforce it. The creditor has a right to select among the stockholders the individual against whom he will proceed; and until he has made the selection, no particular stockholder is liable, and hence no interest can be allowed for any previous time. But, from the time of the commencement of a suit for a debt exceeding the amount of the principal of the defendant's stock, I see no reason why interest should not be allowed. It has then become a fixed liability for a specific amount, and ought, upon general principles, to carry interest."

In the Ohio case the contentions of the parties were very clearly stated by the court as follows:

"It was held by the district court that interest should be charged against the stockholder as of the date of the commencement of the suit. The contention on part of plaintiffs in error is that in no case can the stockholder be liable for a sum beyond the amount of his stock, to be determined at the time the liability is finally fixed by judicial decree; in other words, that the liability is one created by statutory enactment under the Constitution, to be enforced by decree, and interest cannot be added except by virtue of the decree of the court declaring the liability, and no interest can accrue against the stockholder until the liability is thus

declared. On the other hand, the claim is that while the liability is created by the Constitution and the statute, yet the stockholder places himself under liability by contract when he subscribes or acquires the stock; and, resting as well upon contract as upon statute, the interest follows the maturing of the obligation, which is at the time when the corporation becomes insolvent and refuses to pay."

The court said:

"We agree with the counsel that the question is one which, upon principle, is of very considerable difficulty. * * * The district court, in holding the stockholders for interest after the commencement of the suit, evidently followed the law of that case [*Hooker v. Kilgour*, 2 *Cin. R.* (*Ohio*) 350]; and, inasmuch as it has been generally acquiesced in as furnishing the true rule, we are not prepared to say it is not the law in this state."

In analogy to the cases mentioned we hold in the present case, that interest should commence at the time the receivers asked the court to make an assessment upon the stockholders for the payment of creditors' claims, there being nothing before which indicated that they would be expected to pay such claims.

In respect to the expenses and compensation of receivers, and the fees of their counsel, the court are of the opinion that, inasmuch as the receivers are officers or instrumentalities appointed by the court to collect the creditors' claims and carry out the purpose of the statute, they are entitled to proper expenses and reasonable compensation to be paid by the stockholders. They are a part of the machinery employed by the court to accomplish the object sought under the statute, and their expenses and compensation are, therefore, legitimate court costs to be taxed against the respondents.

We think no good reason can be shown why the fees of receiver's counsel should be separately taxed as a part of the costs. Inasmuch, however, as such is the established practice in this State the court are not disposed to change it. It is not certain in many cases that services of counsel will be required, and even if they should be it is impossible to tell even approximately, in advance of the service, what counsel will be entitled to receive. The court are of the opinion that the sum estimated

by the Chancellor for receiver's compensation and expenses, and the fees of their counsel, as well as the estimate for interest on creditors' claims, is largely in excess of what they will be entitled to receive; that said sums should be substantially reduced, and the assessments modified accordingly.

In conclusion, we say that, while we have no doubt the court below had power to require a resident stockholder to pay the entire assessment, we think it inequitable under the facts of this case, and, therefore, hold that the receivers should have been ordered to collect every assessment they should find to be collectible, and that would justify the expense of collection. The entire burden of payment should not, in the first instance, have been imposed upon a single stockholder, even though there be no other found in the jurisdiction. The course adopted may be the most convenient for the receivers and expeditious for the creditors, but in our opinion hardly fair to the resident stockholder. And, moreover, it may very well be that statutory receivers appointed by the court would be more successful in collecting claims out of the State than a stockholder who might be subrogated to their rights by an order of said court. But whether that be so or not, it is manifestly unfair that the resident stockholder should in this case pay not only all the indebtedness but also the costs of collecting from other stockholders their proportional parts of the assessment. Under the peculiar facts and circumstances of this case the fair and equitable proceeding would be for the receivers to collect all the assessments, so far as practicable, and by so doing the burden would fall on all stockholders alike according to their holdings.

The decree of the Chancellor will be affirmed except as modified by this opinion.

HEISEL, J.   I concur in the opinion of the court, excepting as to the claims of Mr. Taft and Mr. Chapin.

Briefly and without argument I desire to state my conclusions as to those claims. Mr. Taft was a director and promoter of the company from its beginning and was fully advised of all actions taken in issuing the common stock as bonus for

the preferred stock and participated therein. He knew that the preferred stock was being sold at par and the common stock, which had been declared by him and the other directors of the company to be" full paid and non-assessable," was being issued as a bonus to purchasers of said preferred stock who had nothing to do with the management of the company, to induce them to purchase the preferred stock. He could not, therefore, in good faith, have relied upon any assessment from such holders of common stock to repay advances made by him to the company in the event of the failure of the company to repay him such advances. Mr. Chapin was counsel for the company and advised and directed the steps taken by Mr. Taft and the other directors in pursuing the course they did pursue. He directed them in the action they took to make the common stock, as he thought, "full paid and non-assessable," and knew that as such, it was being issued as a bonus to purchasers of the preferred stock, who had no part in the management of the company, as an inducement to purchase that stock. He now claims the right to have this same common stock assessed in order that he may be paid for his services. Excepting in the State of New Jersey, where the proceeding was under a statute which the court there said put the creditor's right on a different basis from that under the general law, the overwhelming weight of authority is opposed to such proceeding. Whether the proceeding in the case at bar for the purpose of assessing the stockholders is under the liability imposed by section 20 of the Incorporation Act, or is under the liability that existed prior to that section, can be of no importance, because section 20 imposed no new liability upon the stockholder, but simply stated or declared a liability that existed prior to its passage.

Therefore, it seems to me that the law as generally applied by the courts outside New Jersey should be applied here.

The decree entered by the Supreme Court is as follows:

"AND NOW, TO-WIT, this twenty-first day of November, A. D. 1918, the above causes having been duly argued by counsel for the parties respectively,

"AND IT APPEARING TO THE COURT here that there is no error in the record and proceedings in said causes in the Court of Chancery of the State of Delaware, in and for New Castle County, except in the particulars hereinafter stated,

"IT IS, THEREFORE, ADJUDGED AND ORDERED that the decree of said Court entered in said causes on the fourth day of August, A. D. 1917, be and it is hereby affirmed, except as follows:

"1.   That the estimated interest on the aggregate amount of claims of creditors of the said Arlington Hotel Company filed and allowed by the Chancellor shall be calculted from the date of filing in said cause of the petition to assess stockholders, to-wit, the twenty-fifth day of October, A. D. 1916, to an estimated date of the payment of said aggregate sum, and that the sum of one-hundred and forty thousand dollars calculated for that purpose in the Court below shall be accordingly reduced by the sum of fifty-six thousand dollars.

"2.   That the estimated costs and expenses of the receivership, including the costs of collection of said claims shall be reduced by the amount of fifty thousand dollars, and that the total amount necessary to satisfy the claims of creditors of said corporation and said costs and allowances shall be reduced by the reductions herein provided for.

"3.   That the said sum as so reduced shall be assessed and levied upon said shares of stock and upon the holders thereof, or the legal representatives of such of them as may be dead, as provided in said decree of the Chancellor, entered in said cause below on the fourth day of August, A. D. 1917, and for said purposes an assessment shall be levied in the same manner as provided in said decree in such proportion as will realize the aggregate sum resulting after making the deductions hereinabove ordered.

"AND IT APPEARING TO THE COURT, that while the Chancellor had power in said cause to require the resident stockholder to pay the entire assessment, it would be inequitable under the circumstances of this case that the Receivers should be ordered at this time so to do, before they have endeavored to collect every assessment that they find is collectible and would justify the expense of collection,

"IT IS, THEREFORE, ADJUDGED AND ORDERED that so much of said decree of the Chancellor entered in said cause on the fourth day of August, A. D. 1917, as directs the Receivers to demand and require the said T. Coleman duPont to pay to said Receivers, in addition to the amount in said decree assessed against him, the balance of the total sum for which the said assessment is made, or so much thereof as may remain unpaid by reason of the failure on the part of other stockholders to pay upon notice, and within the period specified in said decree, the amounts thereby assessed upon or against the share or shares of said stock, preferred or common, owned or held by them, or upon or on account of which they are severally liable, be and the same is hereby reversed.

"AND IT IS FURTHER ADJUDGED AND ORDERED, that said Receivers shall be directed to demand and require the said T. Coleman duPont to pay to them in addition to the amount assessed against him on account of the shares held by him the balance of the total sum of said assessment only in the event that after reasonable effort to collect the several amounts assessed against the several stockholders it shall appear to the Chancellor that every collectible assessment which will justify the expense of collection has in fact been collected.

"AND IT IS FURTHER ADJUDGED AND ORDERED, that no dividend shall be paid in the course of the distribution of the fund realized after the assessment herein ordered on the claim of Frederick E. Chapin for services as counsel for the Arlington Hotel Company until after notice to the stockholders assessed upon common stock, which shall be established that said claim is just, reasonable and equitable, and the validity of the same found and determined; and the inclusion of such claim in the amount for which the assessment is levied shall not be deemed to foreclose such question, or estop any stockholder assessed upon such common stock from contesting the validity or dispute the right of said Chapin to participate in the proceeds of the assessment upon said stock. And if said claim be disallowed in whole or in part, the sum so disallowed shall be repaid to the persons paying the assessments on such stock in the event that the total fund shall be otherwise sufficient to satisfy in full and discharge the allowed claims with interest, costs and expenses.

"AND IT IS FURTHER ADJUDGED AND ORDERED that the appellants pay the costs of said causes in this Court, which are hereby taxed at the sum of One Hundred and Ten Dollars and Twenty-three cents, within 90 days, or attachment.

"AND FURTHER, that the Clerk of this Court remit to the said Court of Chancery a duly certified copy of this decree with the opinion of this Court filed in this cause, in order that such further proceedings may be had in said Court in said cause in conformity with this decree as may be necessary.

"James Pennewill, C. J.
"Wm. H. Boyce, J.
"Herbert L. Rice, J.
"T. B. Heisel, J.
"Henry C. Conrad, J."

*Note.* Subsequent to the entry of the amended decree by the Chancellor, Coleman duPont having acquired by assignment all claims of creditors of the Arlington Hotel Company, paid all the administration expenses, costs of the cause, and the receivers, at his request, having discontinued all suits brought by them against stockholders, the receivers were, at his request, discharged.