**HARMAN v. HIMES.**

No. 6343.

United States Court of Appeals for the District of Columbia.

Argued Feb. 7, 8, 1935.

Decided March 25, 1935.

J. H. Bilbrey and H. H. Glassie, both of Washington, D. C., for appellant.

Wilton J. Lambert, R. H. Yeatman, G. B. Craighill, all of Washington, D. C., and John D. Keith, of Gettysburg, Pa., for appellee.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

Lincoln Hotel Corporation was chartered October 27, 1922, under the laws of Delaware. The articles of incorporation

gave it wide powers in relation to dealing in real estate, but concededly the purpose of its incorporation was to build and operate an hotel in the city of Washington. Its authorized capital stock was limited to $1,000,000 until on December 27, 1922, it obtained an amendment to its charter, increasing it to $1,500,000, to be represented by 5,000 shares of preferred and 10,000 shares of common stock, all of the par value of $100 per share. Three months after its incorporation, and one month after the amendment of its charter, namely on January 27, 1923, appellee, Joseph H. Himes, entered into a written agreement with the corporation, in which it agreed to sell and deliver to him and he agreed to purchase 700 shares of preferred and 700 shares of common stock of the corporation for the sum of $50,000. The contract provided that the money should be used for the purpose of acquiring title to certain property in Washington city on which the corporation had options and on which it intended to build its hotel, but that $10,000 might be used for the purposes of organization expenses and promotion and the sale of the remaining preferred and common stock. The corporation agreed to acquire promptly title to the lot and thereafter, out of the first proceeds from the sale of preferred stock, to acquire from Himes at par the $70,000 of preferred stock purchased by him or so much thereof as he might desire to sell. There was another provision looking to the creation of a voting trust by deposit of enough of the company's common stock, together with Himes' 700 shares, to provide control, the voting trust to terminate when the repurchase from Himes of the preferred stock was made.

We gather from the record that the corporation did purchase the lot of land, using the money paid in by Himes as the cash payment, and securing the balance by deeds of trust. What happened thereafter is not so clear, but on the 11th of April, 1928, more than five years after the events just narrated, and at the instance of creditors, appellant, Harman, was appointed receiver by a Delaware court, with the customary powers of receivers in such cases. Harman qualified, gave bond, and took possession of the books of the corporation, but apparently nothing else. Thereafter in the same proceeding an order was passed authorizing creditors to prove their claims against the corporation. This was done and claims were proved and allowed to an amount in excess of $95,000. On April 1, 1931, the receiver, in order to pay the debts of the corporation, petitioned the court to levy an assessment on stockholders for the amount of their respective unpaid stock subscriptions. There was a hearing on this petition, and a decree passed on the 20th of January, 1932, finding there were no funds or property of the corporation with which to pay its debts except the money due from those of its stockholders who had not paid in full for their shares. The amount of debts due by the company was determined, and Himes was declared to be in default to the company to the amount of $90,000 (the difference between the par value of the 1,400 shares of preferred and common stock purchased by him and the payment of $50,000 made by him).

The action below was instituted by the receiver against Himes to recover this $90,000, and was tried to a jury, but after all the evidence had been introduced the trial court gave binding instructions in favor of Himes and thereafter entered judgment against the receiver; and this appeal followed.

The question here is whether, under the statutes of Delaware as they were at the time of making the contract, every holder of corporate stock issued to him for less than par is liable, in case of insolvency, to corporate creditors for the difference between the amount paid and the par of stock so held; stated differently, whether a Delaware corporation has power, under the Constitution and laws of that state, to issue and dispose of par value stock at less than par.

■ We conclude there can be no doubt that in reaching an answer to this question we are controlled by the decisions of the highest court of Delaware construing its Constitution and laws in relation to a business corporation chartered under its laws. Royal Arcanum v. Green, 237 U. S. 531, 544, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771. That case involved a Massachusetts corporation. A suit was brought against it in New York to have declared invalid an amendment to the corporation's Constitution and by-laws increasing the assessment on members. The corporation defended on the ground that the validity of the amendment had been duly declared by a decision of the highest court of Massachusetts. The Court of Appeals of New York rejected this defense, and the Supreme Court reversed its decision, saying that it is now the established rule, first, that the law of the state by which a corporation is created governs in enforcing the liability of a stockholder as a mem-

ber of such corporation to pay the stock subscription which he agreed to make; second, that the state law and proceedings are binding as to the ascertaining of the fact of insolvency and of the amount due the creditors entitled to be paid from the subscription when collected; and, third, that by putting out of view the right of the person against whom a liability for a stockholder's subscription is asserted to show that he is not a stockholder, or is not the holder of as many shares as is alleged, or has a claim against the corporation which at law or equity he is entitled to set off against the corporation, or has any other defense personal to himself, a decree against the corporation in a suit brought against it under the state law for the purpose of ascertaining its insolvency, compelling its liquidation, collecting sums due by stockholders for subscriptions to stock and paying the debts of the corporation, in so far as it determines these general matters, binds the stockholder, although he be not a party in a personal sense.

In the receiver's suit in Delaware, to which we have referred, the question of insolvency,·the amount due the creditors, the sums due by stockholders on subscriptions to stock, were all duly determined, and here the defense on the part of Himes, is based on · the claim that he never was a subscriber for the stock of the corporation, but was a purchaser of stock from a going concern at a time when the corporation needed money for the payment of its debts and for the successful prosecution of its business. He, therefore, tells us that, notwithstanding the general rule may be that the holders of shares of stock which have been issued for an inadequate or illegal consideration, or for no consideration whatever, may be compelled to complete payment to the extent of the par value of such shares, the rule in the federal courts is that in the absence of constitutional or statutory provisions expressly forbidding it, a corporation which has previously issued shares of stock, incurred indebtedness, and acquired property which it is about to lose for want of additional capital, and is otherwise in financial difficulties, may issue and sell additional par value shares at less than par, provided the price paid is not less than the fair value of the shares purchased. He further says that when such purchase is made in good faith and without intent to defraud other shareholders or creditors, the purchaser is not liable for any additional payments to creditors or stockholders of the corporation. To sustain this position, he relies upon Clark v. Bever, 139 U. S. 96, 11 S. Ct. 468, 35 L. Ed. 88, and Handley v. Stutz, 139 U. S. 417, 11 S. Ct. 530, 35 L. Ed. 227.

In Clark v. Bever an Iowa railroad corporation, which was unable to pay in full for construction work on its road, paid the contractor the balance due in its own stock at 20 per cent. of its par value. Subsequently the contractor was sued for the difference between the amount at which the stock was received and par. The Iowa statute provided:

"Nothing herein contained exempts the stockholders of any corporation from individual liability to the amount of the unpaid installments on the stock owned by them or transferred by them for the purpose of defrauding creditors, and an execution against the company may to that extent be levied upon such private property of any individual." Revision 1860, § 1172.

The Supreme Court held that the statute did not impose an express restriction upon the disposition by a corporation of its stock, except such as is imposed upon individuals, and did not prescribe any rule in respect to the liability of a stockholder to creditors except to the extent of any "unpaid installments" on the stock owned by him. In this view, the Supreme Court said that in every such case the question is, first, whether any indebtedness really exists upon the part of the particular stockholder, and that this question must be determined in each case upon its own circumstances and in accordance with the principles of general law touching the rights and liabilities of creditors and stockholders. The Supreme Court found the facts to be that the railroad was in such financial difficulty that it could not pay its floating debt without borrowing money or making sale of its stock, and that it could not sell its stock because nobody would buy it. This left as its only avenue of escape the borrowing of the money and this, the court said, would have added to the burdens of the creditors and original stockholders, though why transferring the debt from one creditor to another would cause this result,· does not appear. However, on these facts the court concluded that the transfer of the stock at 20 cents on the dollar—in payment of the debt—the stock being then without a market and worthless, made the transaction one not forbidden under the Iowa laws or one in which the taker of the

stock was liable for the difference in the price at which it was acquired and its face value.

What is decided in Clark v. Bever is that the Iowa statute imposes no express restriction upon the disposition by a corporation of its stock, and where that appears the decision will turn upon the fact whether the subscription is to original stock or stock subsequently issued and, in the latter case, whether the sale was fair and in the interest of maintaining the business of the corporation and the price paid represents present value.

The case of Handley v. Stutz involved a Kentucky statute quite similar to that of Iowa (see 139 U. S. 417, page 427, 11 S. Ct. 530, 537, 35 L. Ed. 227). There a corporation had increased its capital stock for the purpose of new construction to further develop its property. To get the money for this purpose, the corporation used the new stock as bonus in the sale of bonds. The Supreme Court, in declaring that the purchasers of bonds, with the bonus stock, were not liable for the face value of the latter, said:

"The liability of a subscriber for the par value of increased stock taken by him may depend somewhat upon the circumstances under which, and the purposes for which, such increase was made. If it be merely for the purpose of adding to the original capital stock of the corporation, and enabling it to do a larger and more profitable business, such subscriber would stand practically upon the same basis as a subscriber to the original capital. But we think that an active corporation may, for the purpose of paying its debts, and obtaining money for the successful prosecution of its business, issue its stock, and dispose of it for the best price that can be obtained. Stein v. Howard, 65 Cal. 616, 4 P. 662. As the company in this case found it impossible to negotiate its bonds at par without the stock, and as the stock was issued for the purpose of enhancing the value of the bonds, and was taken by the subscribers to the bonds at a price fairly representing the value of both stock and bonds, we think the transaction should be sustained, and that the defendants cannot be called upon to respond for the par value of such stock, as if they had subscribed to the original stock of the company."

The court, however, recognized in this case, as in Clark v. Bever, that the rule of liability depended upon the state statute. Otherwise it is no more than an affirmance of the rule announced in that case, viz., that an "active corporation"—a "going concern" —finding its original capital impaired by loss may, to preserve the business, issue new stock and sell it at the best price that can be obtained.

Seeking to bring himself within this language, Himes says that the facts surrounding the purchase of his stock show that shortly after the granting of the charter to the corporation it issued and sold some of its stock at par (the record does not disclose how much). With the money thus realized it had purchased options to acquire parcels of land on which it intended to build a hotel; that in accomplishing this it had exhausted its treasury and was then in a precarious condition. It had options which it considered valuable, and which would terminate in a few days unless it was able to sell stock and realize sufficient funds to take up the options; and unless it could take up the options it could not proceed with the business for which it was incorporated. It had to sell its stock at what it could get for it to avoid receivership.

It was this situation, as Himes claims, which induced him to purchase the stock. He therefore insists that the case is like Handley v. Stutz in that here, as there, the corporation, finding its original capital impaired, for the purpose of recuperating itself and providing new conditions for the successful prosecution of its business, sold him the stock at the best price then obtainable; and so he says the rule announced there, when applied here, is a complete defense.

If we should grant Himes' premise and the facts on which he seeks to sustain it, we should still have another hurdle to cross for, as we have indicated already, both in Handley v. Stutz and in Clark v. Bever there was no controlling statute in the state of incorporation, and this was the basic factor in the result. But here, on behalf of the receiver it is claimed there is such statute law in Delaware, and it is further claimed its precise provisions make inapplicable the rule in Handley v. Stutz and Clark v. Bever. If this is correct, the judgment below, if for no other reason, is clearly wrong.

Prior to 1915 there was no statutory enactment of Delaware covering stockholders' liability for part paid stock. In 1915 section 14 (General Corporation Law of Delaware [Rev. Code Del. 1915, § 1928]) was enacted as follows:

"Subscriptions to, or purchase of, the capital stock of any corporation organized or to be organized under any law of this State may be paid for, wholly or partly, by cash, by labor done, by personal property or by real property or leases thereof. * * * And in the absence of actual fraud in the transaction, the judgment of the Directors, as to the value of such labor, property, real estate or leases [thereof], shall be conclusive."

Section 20 (Rev. Code Del. 1915, § 1934) provided:

"When the whole capital stock of a corporation shall not have been paid in, and the assets shall be insufficient to satisfy the claims of its creditors, each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of the par value of such share as fixed by the charter of the company or its certificate of incorporation, or such proportion of that sum as shall be required to satisfy the debts of the company," etc.

Section 20 was amended by Act March 20, 1917 (29 Del. Laws, c. 113, § 10), by adding a provision governing the issuance of no par value stock, but otherwise it remained unchanged, and was the law of Delaware at the time the charter of the corporation was granted and also at the time Himes' stock was acquired.

The section was construed and applied by the courts of Delaware in Cooney Company v. Arlington Hotel Co., 11 Del. Ch. 286, 101 A. 879, 887; Id., 11 Del. Ch. 430, 106 A. 39, 7 A. L. R. 955. The suit there was brought by the receivers of an insolvent Delaware corporation, for authority to collect from stockholders the money not paid on their shares of stock. The corporation was authorized to issue $5,500,000 of stock, part preferred and part common, the common stock to be full paid. The incorporators organized the company and elected directors, and at the first directors' meeting a resolution was adopted reciting that it was necessary, in order to sell the preferred stock, to offer free some of the common stock as an inducement. To accomplish this the whole of the common stock was assigned and transferred to certain of the incorporators, who were authorized to use it in pushing the sale of the preferred stock. It was so used, and later the corporation failed. Receivers were appointed, and suits were instituted for the purpose of collecting from the holders of the common stock the par value under section 20, supra. The chancellor held that when the assets of a corporation are insufficient to pay its creditors, and the whole capital stock of a company has not been paid in, each stockholder is bound to pay on each share held by him the sum necessary to complete the amount of the par value. The amounts due, the court held, may be collected by the receivers by separate suits at law against the stockholders wherever they, or their property, be found; and in such suits the amounts due from the stockholders, together with all individual defenses of each stockholder, are available to them. But in Delaware, the chancellor said, "Corporate stock issued, outstanding and not paid for is a fund for the benefit of creditors," and a corporation cannot make a subscription contract which will free the subscriber from statutory liability, and whoever takes shares of stock of a Delaware corporation assumes the responsibility of paying full par value of the shares for the benefit of creditors in case of insolvency. As to such creditors, he said: "There is no difference between the liability of holders of stock and subscribers to stock, for both are liable."

On appeal to the Supreme Court of Delaware, 11 Del. Ch. 430, 106 A. 39, 41, the decision of the chancellor was affirmed, and the rule as to payment of stock subscriptions in a Delaware corporation laid down in the following language: "Whatever may have been the law before, and whether the statute of this state is simply declaratory of pre-existing law or not, the important fact is that the statute clearly and expressly states the stockholder's liability to creditors to the extent of the par value of stock not paid for."

More to the same effect is to be found in the opinions, and, as we read them, it is perfectly clear that the statutes of Delaware, as construed in that case, impose an absolute liability on the holders of stock of a corporation of that state—original or subsequent—to pay the full par value of the shares so held. And this is also the rule in New Jersey, from whose incorporation laws section 20 of the Delaware statute was taken. In Donald v. Am. Smelt. & R. Co., 62 N. J. Eq. 729, 48 A. 771, 1116, Easton N. Bk. v. American B. & T. Co., 70 N. J. Eq. 732, 64 A. 917, 8 L. R. A. (N. S.) 271, 10 Ann. Cas. 84, and Holcombe v. Trenton W. C. Co., 80 N. J. Eq. 122, 82 A. 618, it was stated flatly that whether the stock be paid for in property or money, the value of the property or the amount of the money in either case must be at least equal to the face value of the stock.

In view of these decisions and the established rule that in the interpretation of state statutes we are bound to follow the rulings of the highest court of the state, it is perfectly clear that the rule in Clark v. Bever and Handley v. Stutz cannot be considered as controlling here; and this same view was taken by the Court of Appeals in the Second Circuit in Enright v. Heckscher, 240 F. 863, 879. In that case one of the questions for decision was whether the New Jersey act was so explicit as to foreclose the question whether an indebtedness claimed against stockholders may be determined by other circumstances like those in Handley v. Stutz and Clark v. Bever.

Judge Rogers, who wrote the opinion, reached the conclusion that a fair construction of the New Jersey act would not permit a defense on those or like issues of fact.

But even if we were in doubt as to these questions, we should still be inclined to the view that Himes has not otherwise brought himself within the doctrine or rule of those two cases. In Handley v. Stutz the corporation was an active, going concern. Its original capital stock had been subscribed and used, its business established, and it was only at a later date—some three years in fact—that in order to extend its business and increase its ability to conduct it successfully, it increased its stock and sold it on the best market.

In Clark v. Bever a railroad company charged with a public duty found itself unable to pay its floating debt or the interest on its bonds. To avoid failure, it issued its stock at 20 per cent. of par (all it was then worth) in payment of a debt. These were the circumstances which the Supreme Court held removed the case from the usual rule of stockholders' liability, but the decision in both cases turned upon the fact that the company was a going business and should not be deprived of the opportunity to keep itself alive by selling its stock at less than par if there were no statute in the state of its incorporation forbidding it.

That is not the case here. The corporation we are concerned with was not an active corporation, a going concern, or an established business when Himes acquired his stock. It had been chartered only three months. In that interval it had sold a part of its stock, how large a part is not disclosed. On the one hand, its application for the amendment shows the affirmative vote of all the then authorized stock, but the stock ledger (Exhibit C) shows that prior to

Himes' purchase certificates for only 44 shares of preferred and 40 shares of common had been issued, and only $8,400 in cash received. Out of this small amount of money it had acquired options on parcels of land, but it had not got beyond that stage. It had neither hotel nor site on which to build it. It had options, but it could not do business on options alone. Necessarily, it had discharged none of the functions for which it was incorporated. It was a paper corporation, but that was all. It was in that respect wholly unlike either of the corporations in Clark v. Bever and Handley v. Stutz. It had never prosecuted any business, and was wholly in the preliminary stages, and the contract with Himes contemplated that $10,000 of his subscription might be used for the purpose of a campaign to sell the stock. The increase of stock under the amended charter was, in the circumstances we have detailed, as much an original issue of stock as if issued under the original charter provisions for, whether previously subscribed for or not, the record shows that a negligible percentage had then been issued or paid for. In view of this, it would be a stretch of imagination to say that the facts bring the case within the so-called "Supreme Court rule." Nor do we think there is any difference in the fact that Himes purchased rather than subscribed for stock. The "acceptance of the certificates is sufficient evidence of an agreement to pay their par value." Handley v. Stutz, 139 U. S. 417, at page 427, 11 S. Ct. 530, 534, 35 L. Ed. 227.

We think that what has been said is enough, but counsel for Himes insist that the Delaware statute has been amended and is now substantially different from the act of 1917, on which we have placed our conclusions. Undoubtedly there is a change (Act of March 22, 1929, 36 Del. Laws, c. 135, § 11). But we have no need to determine its extent. The rights of the parties to this litigation were all established and fixed long prior to the passage of the amendment, and it is not permissible to give it a retrospective effect. The suit to have the corporation declared insolvent, to have its debts determined, and the liability of its stockholders ascertained, was begun a year before the amendment was adopted. To give it effect in that view would be to impair the contractual rights of the creditors—Coombes v. Getz, 285 U. S. 434, 52 S. Ct. 435, 76 L. Ed. 866—certainly as to those existing prior to its passage; and since the corporation was placed in receiver's hands before the passage of the amended act and was then wholly

without assets to do business, we think we may assume that all debts embraced within the Delaware decree come within that class.

Reversed.